UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

| In Re:                   | **Bankruptcy Case** |
|--------------------------|---------------------|
| **WILLIS ENTERPRISES, INC.,** | **No. 11-02609-JDP** |
| Debtor.                  |                     |

_____

**MEMORANDUM OF DECISION**
_____

**Appearances:**

    Trevor L. Hart, PERRY LAW, P.C., Boise, Idaho, Attorney for Creditor Wells Fargo Bank, N.A.

    Judy Geier, EVANS KEANE, LLP, Attorney for Trustee.

*Introduction*

Creditor Wells Fargo Bank, N.A.'s ("Creditor") filed a Motion to Compel Abandonment. Dkt. No. 46. Chapter 7[1] trustee Richard E.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Crawforth ("Trustee") filed an objection to the motion. Dkt. No. 48. The parties filed briefs, and the motion came before the Court for hearing on March 14, 2012, Dkt. Nos. 52-55, after which the Court took it under advisement. The Court has considered the submissions of the parties, the arguments of counsel, as well as the applicable law. This Memorandum disposes of the motion. Fed. R. Bankr. P. 7052; 9014.

*Facts*

On January 30, 2007, Creditor loaned $412,800 to Debtor, secured by collateral listed in a security agreement executed the same date, and perfected by the filing of a financing statement.[2] Dkt. Nos. 46, Exh. 2. The financing statement specifically describes the collateral as follows:

> All machinery, equipment, furniture, inventory, and accounts receivable, wherever located, now owned, or to be acquired, together with all increases to and replacements thereof. This security interest extends to any and all proceeds of the property described herein, including but not limited to chattel paper, documents, insurance proceeds, contract rights and general

---

[2] The financing statement was originally filed on January 12, 2007. Dkt. No. 46-4. It was amended on December 22, 2009, and July 18, 2011. *Id*.

MEMORANDUM OF DECISION – 2

> intangibles now in force or hereafter acquired,
> relating to the above described collateral.

("Collateral").  Dkt. No. 46, Exh. 4.

On August 26, 2011, Debtor filed a chapter 7 petition, and Trustee was appointed.  Dkt. Nos. 1, 8.  On petition day, Debtor had a total of $19,601.95$^3$ on deposit with Creditor in two separate accounts.  Four days later, on August 30, 2011, Creditor sent a letter to Trustee in which it acknowledged the account balances and their status as property of the bankruptcy estate, and sought guidance from Trustee about whether the funds should be turned over to Trustee, or released from the estate.  Dkt. No. 53-4.  The letter contained a box for Trustee to check indicating his election regarding the funds on deposit.  *Id*.  Trustee checked the box providing for turnover, and signed the form on September 28, 2011.  *Id*.  The form was returned to Creditor and the funds were transferred to

---

$^3$ On petition day, Debtor had $17,628.28 in a Wells Fargo checking account and $1,973.67 in a savings account at Wells Fargo.  Dkt. Nos. 46, Exh. 1; 53-3.  Those figures are somewhat in dispute, as Debtor's schedules indicate the amounts as $17,627.24 and $1,973.08.  However, the Court accepts Trustee's figures, as those are the amounts Creditor actually forwarded to Trustee for deposit in his trust account.  Dkt. No. 53-5.

MEMORANDUM OF DECISION – 3

Trustee and deposited in his trust account, where they presently remain. Creditor did not assert any interest in the account funds at that time, and no agreement with Trustee as to the ultimate disposition of the funds was made.

Creditor filed for stay relief by motion on December 2, 2011, seeking permission to pursue its state law remedies as to the Collateral. Dkt. No. 35.  On December 9, 2011, Creditor filed a proof of claim indicating that Debtor owed Creditor $271,147.47 as of the petition date.[4] Claims Reg. 2-1.  There were no objections to the stay relief motion, and the Court entered an order granting it on December 27, 2011.  Dkt. No. 42. Despite his lack of formal objection to the stay relief motion, on December 5, 2011, Trustee informed Creditor via email that it was his position that approximately $10,000 of the funds that were on deposit with Creditor when the bankruptcy case was filed were proceeds from the sale of a vehicle that was not part of the Collateral, and thus were available for

---

[4] Debtor's schedule D lists the debt owed to Creditor as $267,000, with $245,631.68 of that amount being unsecured.  Dkt. No. 1.

MEMORANDUM OF DECISION – 4

distribution to unsecured creditors by Trustee in the bankruptcy case. Dkt. No. 46, Exh. 1. Creditor informed Trustee that it held a perfected security interest, as well as a statutory banker's lien, in all of the funds it had turned over to Trustee. *Id*. Trustee declined to release the funds, and Creditor filed the motion to compel abandonment on January 30, 2012 to obtain them. Dkt. No. 46.

*Analysis and Disposition*

Section 554(b) provides that upon request by a party in interest, and after notice and a hearing, "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Creditor contends that because the funds in question are subject to a perfected security interest and a banker's lien securing a debt which far exceeds the amount of funds, they are of inconsequential value to the estate. Trustee contends that, asserting his status as a hypothetical judgment lien creditor of the debtor, Creditor's asserted liens are inferior to his rights in the funds such that

MEMORANDUM OF DECISION – 5

they are not of inconsequential value to the estate.[5] Thus, the first issue is whether Creditor's asserted liens are superior to Trustee's rights in the funds.

A. The Idaho Banker's Lien

The Idaho Code grants a statutory lien to a bank "dependent on possession, upon all property in his hands, belonging to a customer, for the balance due to [the bank] from such customer in the course of the business." Idaho Code § 45-808. Trustee points out, though, that Creditor no longer has possession of the funds, and therefore, has waived its statutory lien in the money. Indeed, it has long been the rule that, generally, "a common-law or a statutory lien, dependent upon possession, is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches." *Ag Servs.*

---

[5] Section 544(a)(1) vests a trustee with the same rights and powers that would be available to a hypothetical creditor that extended credit to the debtor as of the time of commencement of the bankruptcy case, armed with a judgment lien on the debtor's property. While Trustee can not "avoid" Creditor's liens in the funds using this power by simply objecting to Creditor's motion, if Trustee's position is correct, then the funds are not of inconsequential value to the bankruptcy estate, and not subject to abandonment.

MEMORANDUM OF DECISION – 6

*of Am., Inc. v. Kechter ex rel. Ketcher*, 44 P.3d 1117, 1120 (Idaho 2002)

(quoting *Gould v. Hill*, 251 P. 167, 171 (Idaho 1926)); *see also Boggan v. Hoff Ford, Inc. (In re Boggan)*, 99.4 IBCR 179, 181 n.6 (Bankr. D. Idaho 1999), *aff'd* 251 B.R. 95 (9th Cir. BAP 2000) (referring to possessory liens for caring for or repairing personal property, which are dependent upon possession, such liens are "waived or lost only by the lien holder who voluntarily or unconditionally parts with possession or control of the personal property.")  Additionally, the Idaho Supreme Court has held that "it is clear that the phrase 'dependent upon possession' has been used historically in Idaho to mean that the lien exists only so long as the lien claimant remains in possession of the property to which the lien is attached." *Ag Servs. of Am.*, 44 P.3d at 1120.  A more recent decision from this Court is particularly instructive on this point.  In *In re Lifestyle Home Furnishings, LLC*, 418 B.R. 382 (Bankr. D. Idaho 2009), this Court held:

> Wells Fargo does not have a banker's lien on the
> subject funds.  A banker's lien under Idaho Code
> § 45-808 is dependent on possession.  Wells Fargo
> lost possession of the funds when it turned them
> over to Trustee.

MEMORANDUM OF DECISION – 7

*Id*. at 386.

In this case, as in *Lifestyle*, Creditor's statutory banker's lien rights are in jeopardy because Creditor relinquished possession of the funds and gave them to Trustee. Indeed, the facts in this case may favor Trustee even more than those in *Lifestyle*, as the bank in that case turned the funds over after a trustee demand. Here, Creditor voluntarily offered to turn the account funds over to Trustee without action on his part. Indeed, the letter which Creditor sent to Trustee on August 30, 2011 provides:

> WELLS FARGO BANK, N.A. received notification of WILLIS ENTERPRISES, INC's bankruptcy petition. Sections 541 and 542 of the Bankruptcy Code require us to act in good faith to preserve the Estate Funds and to follow your direction with regard to property of the estate. The debtor has 2 account(s) with WELLS FARGO, with combined current balances of $19,600.32; subject to change. *The balance in the account(s) has become property of the bankruptcy estate, known as the "Estate Funds." The Estate Funds are now in bankruptcy status, which means the funds are payable only to you or upon your order.*
> If you wish to have the account(s) turned over to the bankruptcy estate, or if you wish to release the account(s) from the Bankruptcy Estate, please complete and sign the enclosed form . . . .

MEMORANDUM OF DECISION – 8

Dkt. N. 53-4 (capitalization in original; additional emphasis added).

Under these facts, Creditor's invitation to Trustee to voluntarily turn over the funds in this case to him could be viewed as not only a relinquishment of possession of the funds on deposit, but also as a waiver of its right to assert a banker's lien on the money, because of the unconditional nature of the turnover.

Even if Creditor's conduct could somehow be deemed involuntary, Creditor needed to take "prompt" action to preserve its possessory lien rights. In *Lifestyle*, this Court stated:

> Wells Fargo does not have a banker's lien on the subject funds. A banker's lien under Idaho Code § 45-808 is dependent on possession. Wells Fargo lost possession of the funds when it turned them over to Trustee. *Having done so, it was obligated to take prompt action, including filing a motion for relief from the automatic stay and requesting adequate protection, to preserve its possessory lien rights.* This it failed to do. Wells Fargo waited over a year to take action in this Court to assert or preserve its possessory lien rights in the funds. Because it now lacks possession of the funds and it has unnecessarily delayed asserting its rights, Wells Fargo may not now seek a banker's lien upon the funds Trustee holds.

MEMORANDUM OF DECISION – 9

418 B.R. at 386 (internal citations omitted; emphasis added).

In this case, Creditor became aware of the bankruptcy filing at some time prior to August 30, 2011 when it sent the letter to Trustee. It was not until December 2, 2011, that Creditor filed a motion for stay relief, and in that motion, it sought only authority to "exercise its state law remedies with respect to the [Collateral]." Dkt. No. 35. The stay relief motion did not expressly seek any right to access the funds. *Id*. In other words, the stay relief motion did nothing to preserve Creditor's possessory lien rights. Creditor's counsel has acknowledged that he did not learn of the voluntary turnover of the funds to Trustee until after the stay relief motion was filed, and that the voluntary turnover of Debtor's funds to Trustee was an error on Creditor's behalf. Creditor filed the motion to compel abandonment on January 30, 2012. Dkt. No. 46.

Creditor is correct in arguing that there is no firm standard against which to measure the "promptness" of its actions to protect its asserted possessory lien rights. Even so, the Court concludes that a five month delay in asserting those lien rights is not "prompt," especially in light of

MEMORANDUM OF DECISION – 10

the unconditional, voluntary nature of the turnover of the funds by Creditor to Trustee in this case.

The Court concludes that, as against Trustee, Creditor's asserted banker's lien in the funds is too tenuous upon which to base a request for abandonment.

B.  Creditor's Security Interest

While Creditor's asserted statutory lien in the funds is doubtful, Creditor also has the benefit of the rights granted by the security agreement executed by Debtor, and perfected by the filing of the financing statements.  Trustee does not appear to challenge the validity of the security interest.  Rather, he argues that the description of the Collateral in the security agreement is not adequate to include funds on deposit with Creditor.

Trustee's argument has some heft.  While the Collateral description in the security agreement includes "general intangibles," Idaho's Uniform Commercial Code provides that deposit accounts must be specifically and expressly described to constitute collateral for a debt.  Idaho Code § 28-9-

MEMORANDUM OF DECISION – 11

102(42).[6] The description of the Collateral in this case does not include "deposit accounts," and thus it is doubtful that they are subject to the security interest granted in the agreement.

However, as Creditor reminds the Court, the Collateral description covers both "accounts receivable" and "proceeds." Creditor does not contend that the funds on deposit are accounts receivable; however, Creditor notes, the funds may be proceeds of such receivables, and thus covered by the description of Collateral.

Assuming the funds were indeed proceeds of Debtor's accounts receivable, Idaho's UCC provides that if they were commingled with other property, they are identifiable only 1) if the proceeds are "goods," or 2) "to

---

[6] Idaho's UCC provides that "[g]eneral intangible" means any personal property, including things in action, *other than accounts* . . . , [and] *deposit accounts*[.] Idaho Code § 28-9-102(42) (emphasis added). The official comment to this section explains that this definition was recently "revised to exclude commercial tort claims, *deposit accounts*, and letter-of-credit rights. Each of the three is a separate type of collateral. One important consequence of this exclusion is that tortfeasors (commercial tort claims), *banks (deposit accounts)*, and persons obligated on letters of credit (letter-of-credit rights) are not 'account debtors' having the rights and obligations set forth in Sections 9-404, 9-405, and 9-406." (Emphasis added).

MEMORANDUM OF DECISION – 12

the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this chapter with respect to commingled property of the type involved." Idaho Code § 28-9-315(b). "Thus, once a debtor deposits cash proceeds into an account and commingles it with other money, the identifiability of a secured creditor's proceeds is destroyed unless the secured creditor can prove the money currently in the debtor's account corresponds to its collateral." *In re Skagit Pac. Corp.*, 316 B.R. 330, 338 (9th Cir. BAP 2004). The burden on tracing the proceeds is on the party claiming the security interest in the proceeds. *Id*. (citing *Stoumbos v. Kilimnik*, 988 F.2d 949, 957 (9th Cir. 1993)). The *Skagit* court further noted that "[h]istorically, courts have required a creditor to submit detailed documentary evidence or testimony proving that an account contained proceeds. Still, under the revised UCC, a creditor must provide documentation of its identifiable or traced proceeds." *Id.* (citing *Stoumbos*, 988 F.2d at 958.)

    On this record, Creditor can not trace the funds on deposit to

MEMORANDUM OF DECISION – 13

Debtor's accounts receivable. Because it is Creditor's burden to show the funds are part of the Collateral, and it has not done so, it has not shown that the funds are of inconsequential value to the bankruptcy estate.

## *Conclusion*

Because Creditor voluntarily and unconditionally turned the funds over to Trustee and did not promptly take action to preserve its statutory banker's lien, it is likely that it waived that lien. Furthermore, while perhaps some of the funds turned over to Trustee may constitute proceeds of the Collateral, and thus are subject to the security interest granted in the security agreement between Creditor and Debtor, it is Creditor's responsibility to trace those proceeds, and it has not done so. Because Creditor has not established its rights in the funds, it has not shown that they are of inconsequential value to the estate.

Creditor's motion for abandonment will be denied by separate order.

MEMORANDUM OF DECISION – 14

Dated: September 10, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 15